**UNITED STATES**
**ENVIRONMENTAL PROTECTION AGENCY**

**BEFORE THE ADMINISTRATOR**

| | | |
|---|---|---|
| **In the matter of** | ) | |
| | ) | |
| **Topik Enterprises, LLC, and Lead & Asbestos Encasement Designs, LLC,** | ) | **Docket No. TSCA-01-2004-0009** |
| | ) | |
| | ) | |
| **Respondents** | ) | |
| | ) | |

## INITIAL DECISION

By: Carl C. Charneski
Administrative Law Judge

Issued: April 6, 2006
Washington, D.C.

Appearances

| | |
|---|---|
| For Complainant: | Peter M. DeCambre, Esq.<br>Andrea Simpson, Esq.<br>U.S. Environmental Protection Agency<br>Region 1<br>Boston, Massachusetts |
| For Respondent: | Roy S. Topik<br>Topik Enterprises, LLC<br>Lead and Asbestos Encasement Designs, LLC<br>Fleming Island, Florida |

## I. Statement of the Case

This is a civil penalty enforcement proceeding arising under Section 16(a) of the Toxic Substances Control Act ("TSCA"). 15 U.S.C. § 2615(a). The United States Environmental Protection Agency ("EPA") has filed a six-count Amended Complaint against Topic Enterprises, LLC ("Topik Enterprises"), and Lead and Asbestos Encasement Designs, LLC ("LAED"),

EXHIBIT A

charging respondents with multiple violations of Section 409 of TSCA, 15 U.S.C. § 2689.[1] The alleged violations stem from respondents' asserted non-compliance with 40 C.F.R. Part 745, subpart F, "Disclosure of Lead-Based Paint and/or Lead-Based Paint Hazards Upon Sale or Lease of Residential Property" (the "Disclosure Rule"). The Disclosure Rule "implements the provisions of 42 U.S.C. 4852d, which impose certain requirements on the sale or lease of target housing." 40 C.F.R. 745.100.[2]

The Amended Complaint charges Topik Enterprises with one count, and LAED with six counts, of violating TSCA. All of the counts involve the leasing of target housing. In addition, four of the six counts allege multiple instances of Disclosure Rule violation by respondents. All told, there are 45 charges of violation alleged by EPA in the six-count complaint.[3]

For the alleged violations, EPA requests that a civil penalty of $88,000 be assessed against Topik Enterprises and that a civil penalty of $151,800 be assessed against LAED. 15 U.S.C. § 2615. *See* Compl. Br. at 65-66. Both Topik Enterprises and LAED deny the charges asserted in the Amended Complaint. A hearing was held in this matter on April 5-7,

---

[1] Section 409 states:

> It shall be unlawful for any person to fail or refuse to comply with a provision of this chapter or with any rule or order issued under this subchapter.

15 U.S.C. § 2689.

[2] "Target housing" is "any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing for the elderly or persons with disabilities) or any 0-bedroom dwelling." 42 U.S.C. § 4851b(27); 40 C.F.R. 745.103. All of the violations at issue in this case involve target housing.

[3] The Amended Complaint charges six different categories of violation, with each count addressing a specific Disclosure Rule requirement. The six counts involve: (1) failure to provide lessees with a lead hazard information pamphlet, as required by 40 C.F.R 745.107(a)(1); (2) failure to disclose to lessees the presence of any known lead-based paint and, or, lead-based paint hazards, as required by 40 C.F.R. 745.107(a)(2); (3) failure to provide records or reports available to the lessor pertaining to lead-based paint, as required by 40 C.F.R. 745.107(a)(4); (4) failure to include as an attachment, or within the contract to lease target housing, a Lead Warning Statement, as required by 40 C.F.R. 745.113(b)(1); (5) failure to include a statement by the lessor disclosing the presence of known lead-based paint or lead-based paint hazards, or lack of knowledge thereof, as required by 40 C.F.R. 745.113(b)(2); and (6) failure to provide a list of any records or reports available to the lessor that pertain to lead-based paint or lead-based paint hazards in the housing, as required by 40 C.F.R. 745.113(b)(3).

2005, in Providence, Rhode Island, to resolve these issues.[4]

In this enforcement proceeding, EPA bears the burden of proving, by a "preponderance of the evidence," that the violations occurred as charged and that the relief sought is appropriate. 40 C.F.R. 22.24. "[T]he preponderance of the evidence standard means that a fact finder should believe that his factual conclusion is more likely than not." *Ocean State Asbestos Removal, Inc.*, 7 E.A.D. 522, 530 (EAB 1998) (citations omitted).[5]

Measuring the evidence of record against this standard, it is held that as to Count I, Topik Enterprises violated 40 C.F.R. 745.107(a)(1) in 16 of the 18 instances alleged in the Amended Complaint and that LAED violated Section 745.107(a)(1) in 17 of the 19 instances alleged. With respect to Count II, LAED is held to have committed one of the two violations of 40 C.F.R. 745.107(a)(2) charged. Similarly, as to Count III, LAED is held to have committed one of the two violations of 40 C.F.R. 745.107(a)(4) charged. As to Count IV, involving one alleged violation of 40 C.F.R. 745.113(b)(1) and Count V, involving one alleged violation of 40 C.F.R. 745.113(b)(2), LAED is held to have committed the violations as charged. Finally, as to Count VI, it is held that LAED violated 40 C.F.R. 745.113(b)(3) in the two instances cited in the Amended Complaint. For these violations, Topik Enterprises is assessed a civil penalty of $79,200, and LAED is assessed a civil penalty of $143,000. 15 U.S.C. § 2615.[6]

## II. Statutory and Regulatory Background

In 1992, Congress amended TSCA, 15 U.S.C. §§ 2601-2692, by enacting the Residential Lead-Based Paint Hazard Reduction Act ("RLBPHRA"). Pub. L. No. 102-550, 106 Stat. 3672 (1992) (codified in chapters 15 and 42 of the United States Code). The stated purposes of the RLBPHRA include "develop[ing] a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible" and "educat[ing] the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." *See* 42 U.S.C. §§ 4851a(1) & (7). *See also, Harpoon Partnership*, 12 E.A.D. __, TSCA Appeal No. 04-02 (EAB May 19, 2005), at 3-4.

Section 1018 of the RLBPHRA required that the Administrator of the U.S. Environmental Protection Agency and the Secretary of the Department of Housing and Urban

---

[4] Both respondents were represented by Roy S. Topik, who appeared *pro se*. The parties stipulated that Mr. Topik was a "member" of both Topik Enterprises and LAED. Jt. Stips. 2 & 7.

[5] *See* Tr. 24-25 (Vol. 1).

[6] In their answer, respondents raised the affirmative defenses of accord and satisfaction, collateral estoppel, and res judicata. As noted by EPA, these defenses were not pursued thereafter and, accordingly, are deemed to have been waived. *See* Compl. Br. at 39. It is the view of this tribunal that had these defenses been pursued, and had they been based upon Joint Exhibits 20-26, respondents' affirmative defenses would nonetheless have failed.



EXHIBIT A

Development ("HUD") promulgate regulations for the disclosure of "lead-based paint hazards in target housing which is offered for sale or lease." 42 U.S.C. § 4852d(a). Insofar as this case is concerned, these regulations were to require that, "before the ... lessee is obligated under any contract to ... lease housing," the lessor shall make certain disclosures relating to the presence of lead-based paint hazards to the lessee. *Id.* To carry out this mandate, EPA and HUD jointly issued what is known as the "Disclosure Rule." *See* 61 Fed. Reg. 9064 (March 6, 1996).

EPA's Disclosure Rule regulations are codified at 40 C.F.R. Part 745, subpart F, and are the subject of the present enforcement proceeding.[7] The purpose of the Disclosure Rule "is to ensure that families are aware of: (1) [t]he existence of lead-based paint or lead-based paint hazards in target housing, (2) the hazards of exposure to lead-based paint, and (3) ways to avoid such exposure before they obligated to purchase or lease housing that may contain lead-based paint." Proposed Rule, 59 Fed. Reg. 54984, 54986 (Nov. 2, 1994).

## III. Facts

Respondents Topik Enterprises and LAED are limited liability companies organized under the laws of the State of Rhode Island. Jt. Stips. 1 & 6. All of the alleged violations cited in Counts I through VI involve target housing located in the city of Woonsocket, Rhode Island, as to which Topik Enterprises or LAED were the "lessors" as that term is defined at 40 C.F.R. 745.103.

In 1999, and 2000, the Rhode Island Department of Health ("RIDOH"), upon receiving reports of lead poisoning among children, conducted inspections at several rental properties owned by either Topik Enterprises or LAED.[8] Tr. 43, 62, 74 (Vol. 1); *See* Jt. Exs. 76 & 77. Ultimately, each of these inspections resulted in the matter being referred by RIDOH to the Rhode Island Attorney General's Office for prosecution. Tr. 61-62, 72-73, 87 (Vol. 1); Jt. Ex. 20.

Thereafter, in January of 2002, the Rhode Island Attorney General's Office informed EPA Region 1 that it was filing an action against Roy S. Topik, Topik Enterprises, and LAED for violations of state lead paint reduction laws. Tr. 204 (Vol. 1); Jt. Ex. 20. Following this announcement, on January 28, 2002, EPA Region 1 issued an administrative subpoena, pursuant to Section 11 of TSCA, 15 U.S.C. § 2610, to Roy S. Topik, Topik Enterprises, and LAED. Through this subpoena EPA sought leases and documentation of rental agreements, among other things, for the period beginning January 1, 1998, and ending January 15, 2002, in order to assess the recipients' compliance with the lead and lead-based paint Disclosure Rule. Tr. 206-207

---

[7] HUD's Disclosure Rule regulations are codified at 24 C.F.R. Part 35, subpart A.

[8] The properties were 149 Elm Street, 606 East School Street, and 123 Rathbun Street.

(Vol. 1); Jt. Ex. 27.[9]

Because of the recipients' non-compliance with the subpoenas, the Rhode Island U.S. Attorney's Office filed a petition on behalf of EPA Region 1 with the U.S. District Court for the District of Rhode Island seeking the subpoenas' enforcement. On June 21, 2002, the Court granted the government's petition. Tr. 222-223 (Vol. 1); Jt. Ex. 32. In response to the Court's order, Roy S. Topik, Topik Enterprises, and LAED provided one lease for the year 2000, 53 leases for the year 2001, and three leases for the year 2002. Tr. 223, 226-227 (Vol. 1). Based upon the leases provided, EPA Region 1 brought the present action against Topik Enterprises and LAED alleging violations of Section 409 of TSCA, the Residential Lead-Based Paint Hazard Reduction Act, and the Disclosure Rule.

At the time of the violations at issue in this case, Topik Enterprises was the lessor of the following properties: 123/125-129 Rathbun Street; 606 East School Street; 611-613 East School Street; 614 East School Street; 628 East School Street; 25 Laval Street; 176-178 South Main Street; and 35-37 Foundry Street. Jt. Stip. 3. These properties were constructed prior to 1978, and qualify as "target housing," as defined by Section 401(17) of TSCA, 15 U.S.C. § 2681(17), and 40 C.F.R. 745.103. Jt. Stips. 4 & 5. In addition, none of these properties qualify for the exemptions set forth in TSCA, RLBPHRA, or the Disclosure Rule. Jt. Stip. 5.

Also, at the time of the violations at issue in this case, LAED was the lessor of the following properties: 149 Elm Street; 24 Gaulin Street; 54-56 Hamlet Avenue; 450-454 Second Avenue; and 563-567 Willow Street. Jt. Stip. 8. These properties were constructed prior to 1978, and qualify as "target housing," as defined by Section 401(17) of TSCA, *id.*, and 40 C.F.R. 745.103. Jt. Stips. 9 & 10. Likewise, none of these properties qualify for the exemptions set forth in TSCA, RLBPHRA, or the Disclosure Rule. Jt. Stip. 10.

## IV. Discussion

### A. Liability

**Count I**

In this count, EPA separately charges Topik Enterprises and LAED with 37 violations of 40 C.F.R. 745.107(a)(1) for failing to provide an EPA-approved lead hazard information pamphlet to lessees of target housing, prior to those leases becoming obligated under a lease contract. Section 745.107(a)(1) provides:

---

[9] Subsequently, EPA Region 1 issued separate subpoenas to Roy S. Topik, Topik Enterprises, and LAED seeking lease records, rental records, and lead paint disclosure records for the period beginning March 1, 1999, through March of 2002. Tr. 215-217 (Vol. 1); Jt. Exs. 28-30.



EXHIBIT A

> The ... lessor shall provide the ... lessee with an EPA approved lead hazard information pamphlet. Such pamphlets shall include the EPA document entitled *Protect Your Family From Lead in Your Home* (EPA #747-K-94-001) or an equivalent pamphlet that has been approved for use in that State by EPA.

40 C.F.R. 745.107(a)(1).[10]

The lead hazard information pamphlet identified in Section 745.107(a)(1) is intended to inform lessees as to (1) the health effects of exposure to lead and lead-based paint, (2) the exposure pathways of lead and lead-based paint, (3) testing children for lead exposure, (4) identifying lead and lead-based paint hazards, and (5) measures to reduce lead paint exposure. Tr. 35 (Vol. 2); Jt. Ex. 79.

Insofar as Topik Enterprises is concerned, Count I of the Amended Complaint charges non-compliance with Section 745.107(a)(1) as to each of the following lease agreements:

a. On August 1, 2001, lessee Joann Duquette signed a month-to-month lease agreement for 125 Rathbun Street, Unit 2 (Jt. Ex. 38);

b. On August 1, 2001, lessees Kevin and Jane Donnell signed a month-to-month lease agreement for 606 East School Street, Unit 3 (Jt. Ex. 39);

c. On August 1, 2001, lessee Cindy Boerger signed a month-to-month lease agreement for 606 East School Street, Unit 3R (Jt. Ex. 40);

d. On October 15, 2001, lessee Laura LaCasse signed a month-to-month lease agreement for 606 East School Street, Unit 3L (Jt. Ex. 41);

e. On August 1, 2001, lessee Edgar Bastien signed a month-to-month lease agreement for 611 East School Street, Unit 1R (Jt. Ex. 42);

f. On August 1, 2001, lessee Michelle Cote signed a month-to-month

---

[10] Also, pursuant to 40 C.F.R. 745.113(b)(4), each contract to lease target housing shall include as an attachment, or within the lease contract, a statement by the lessee affirming receipt of the lead hazard information pamphlet identified in Section 745.107(a)(1). Although the provisions of Section 745.113(b)(4) play a role here in determining whether respondents violated Section 745.107(a)(1), as alleged, EPA does not charge them with violating this provision as well.

lease agreement for 611 East School Street, Unit 1L (Jt. Ex. 43);

g. On August 1, 2001, lessee Muriel St. Pierre signed a month-to-month lease agreement for 611 East School Street, Unit 2R (Jt. Ex. 44);

h. On September 17, 2001, lessees Andrew and Neiko Franco and Renee Chandler, signed a month-to-month lease agreement for 613 East School Street (Jt. Ex. 45);

I. On August 1, 2001, lessee Maria Martinez signed a month-to-month lease agreement for 614 East School Street, Unit 3F (Jt. Ex. 46);

j. On August 1, 2001, lessee Patricia Turcotte signed a month-to-month lease agreement for 25 Laval Street, Unit 2L (Jt. Ex. 47);

k. On August 1, 2001, lessee Louis Benoit signed a month-to-month lease agreement for 25 Laval Street, Unit 3R (Jt. Ex. 48);

l. On August 1, 2001, lessee Marylin Gaudet signed a month-to-month lease agreement for 178 South Main Street, Unit 1F (Jt. Ex. 49);

m. On August 1, 2001, lessee Fred Brown signed a month-to-month lease agreement for 178 South Main Street, Unit 2R (Jt. Ex. 50);

n. On September 1, 2001, lessees Neil Cote and Laura Greene signed a month-to-month lease agreement for 178 South Main Street, Unit 3F (Jt. Ex. 51);

o. On September 1, 2001, lessees James Vance and Liz Burnes signed a month-to-month lease agreement for 178 South Main Street, 3rd Floor (Jt. Ex. 53);

p. On August 1, 2001, lessee Constantino Cecconi signed a month-to month lease agreement for 37 Foundry Street, Unit 2R (Jt. Ex. 54);

q. On October 1, 2001, lessee Nichole Leyhe signed a month-to-month lease agreement for 37 Foundry Street, Unit 3F (Jt. Ex. 55); and

r. Kerrie Barreiro leased an apartment at 628 East School Street from



EXHIBIT A

October, 1999, through May, 2001.[11]

Amend. Compl., ¶ 30; *see* Compl. Br. at 27-28.

Insofar as LAED is concerned, Count I of the Amended Complaint charges non-compliance with Section 745.107(a)(1) (*i.e.*, failing to provide lead hazard information pamphlets to lessees) as to each of the following lease agreements:

a. On August 1, 2001, lessee Carman Berroa signed a month-to-month lease agreement for 149 Elm Street, Unit 1R (Jt. Ex. 56);

b. On August 1, 2001, lessees Richard Franklin and Patricia Andrade signed a month-to-month lease agreement for 149 Elm Street (Jt. Ex. 57);

c. On January 26, 2001, lessees Richard Franklin and Patricia Andrade signed a month-to-month lease agreement for 149 Elm Street, Unit 2L (Jt. Ex. 58);[12]

d. On August 1, 2001, lessees David McCollum and Hope Martin signed a month-to-month lease agreement for 24 Gaulin Street, Unit 2L (Jt. Ex. 61);

e. On August 1, 2001, lessees Catherine Lambert and Michael Daigle signed a month-to-month lease agreement for 24 Gaulin Street, Unit 2R (Jt. Ex. 62);

f. On August 1, 2001, lessees Ernest Brochu and Diane Martini signed a month-to-month lease agreement for 24 Gaulin Street, Unit 3R (Jt. Ex. 63);

g. On August 1, 2001, lessees Tina Falls and Jarrod Croteau signed a month-to-month lease agreement for 54 Hamlet Avenue, Unit 1R (Jt. Ex. 64);

h. On August 1, 2001, lessees Frank Disano and Yvonne Tetreault signed a month-to-month lease agreement for 54 Hamlet Avenue, Unit 2L (Jt. Ex. 65);

---

[11] There is no signed lease agreement for Barreiro. Her testimony regarding the lease agreement with Topik Enterprises appears at Tr. 147-148 (Vol. I).

[12] The actual lease identifies "Richard and Patricia Franklin" as the lessors. Jt. Ex. 58.



EXHIBIT A

i. On August 1, 2001, lessees Hector Lebron and Jannet Vazquez signed a month-to-month lease agreement for 54 Hamlet Avenue, Unit 2R (Jt. Ex. 66);

j. On August 1, 2001, lessees Renee and Ronald Hall signed a month-to-month lease agreement for 54 Hamlet Avenue, 3rd Floor (Jt. Ex. 67);

k. On August 1, 2001, lessees George Letendresse and Dorothy Church signed a month-to-month lease agreement for 56 Hamlet Avenue, Unit 1R (Jt. Ex. 68);

l. On August 1, 2001, lessee Linda Bouvier signed a month-to-month lease agreement for 56 Hamlet Avenue, 2nd Floor (Jt. Ex. 69);

m. On August 1, 2001, lessee Samuel Chapman III signed a month-to-month lease agreement for 454 Second Avenue, Unit 3 (Jt. Ex. 70);

n. On August 1, 2001, lessee Jessica Velazquez signed a month-to-month lease agreement for 454 Second Avenue, Unit 5 (Jt. Ex. 71);

o. On July 20, 2001, lessees Jose and Shannon Ortiz signed a month-to-month lease agreement for 563 Willow Street, Unit 2F (Jt. Ex. 72);

p. On August 1, 2001, lessee Sandra Myers signed a month-to-month lease agreement for 563 Willow Street, Unit 1F (Jt. Ex. 73);

q. On August 1, 2001, lessee Barbara Rodriguez signed a month-to-month lease agreement for 563 Willow Street, Unit 1R (Jt. Ex. 74);

r. On August 1, 2001, lessees Christopher and Waleska Gauthier signed a month-to-month lease agreement for 563 Willow Street, Unit 3F (Jt. Ex. 75); and

s. On August 1, 2001, lessees Rodney Wynn and Lisa Salisbury signed a month-to-month lease agreement for 563 Willow Street, Unit 3R (Jt. Ex 75A).

Amend. Compl., ¶ 31; *see* Compl. Br. at 28-29.[13]

---

[13] The leases involving Carman Berroa (lease "a"), Samuel Chapman III (lease "m"), Jessica Velazquez (lease "n"), and Barbara Rodriguez (lease "q") actually list Topik Enterprises



EXHIBIT A

1. __The "35" Leases__

Thirty-five of the 37 above cited leases contained a "Disclosure on Lead-Based Paint and Lead-Based Paint Hazards" ("Disclosure"). This Disclosure was attached to each lease. The two leases which did not have the Disclosure attached are the leases of Kerrie Barreiro (referenced at Tr. 147-148 (Vol. I)), and Richard Franklin and Patricia Andrade (Jt. Ex. 58). These two leases will be addressed separately from the other 35 leases.

The Disclosure is a one-page document which contains several informational blocks. The first block contains a "Lead Warning Statement" that states:

> Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not taken care of properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and lead based paint hazards in the dwelling. *Tenant must also receive a federally approved pamphlet on lead poisoning prevention.*

Emphasis added.

The second block is titled "Lessor's Disclosure." Here, all of the above Disclosures contain the initials "RST," apparently for Roy S. Topik, with the boxes checked that "Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing," and "Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing."

Next is the "Lessee's Acknowledgment" block. Each of the Disclosures produced by EPA shows that there are no lessee initials next to the line, "(d) Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*" (*See* Joint Exhibits cited above.) Finally, at the bottom of each Disclosure form is the signature block containing the signature of Roy S. Topik, signing as president of Topik Enterprises, as well as the signature of the named lessee.

As noted, insofar as Count I is concerned, Section 745.107(a)(1) requires that the lessor

---

as the lessor, and not LAED, as alleged in the Amended Complaint. Nonetheless, LAED has not raised any objection to the charges involving these leases, either at the hearing, or in its post-hearing submissions. Given this fact, and given the fact that Roy S. Topik signed all of the leases involving LAED as "president of Topik Enterprises," it is unclear as to whether any problem exists regarding the identity of the proper respondent in these four instances. Accordingly, this tribunal will not undertake to reallocate between the respondents the charges of violation alleged in Count I.



EXHIBIT A

of target housing provide the lessee with "an EPA-approved lead hazard information pamphlet" before the lessee is obligated under any contract to lease. In 35 of the 37 instances of alleged violation involving Count I, EPA has offered evidence to the effect that the lead hazard pamphlet was not provided as required by showing that the lessee of target housing did not initial receipt of the pamphlet on the Disclosure form attached to the lease.

EPA also has elicited testimony from some of the lessees to the effect that they were not provided a lead hazard information pamphlet at the time that they entered into their leases. These lessees are Tina Falls, Jarrod Croteau, and Frank Disano. Tr. 133, 168, 232-235 (Vol. 1).[14]

On the basis of the stipulated leases and attachments, as well as the testimony of three of the lessees, EPA has established a prima facie violation of Section 745.107(a)(1) as to the 35 leases in which the lessees did not initial their receipt of a lead hazard pamphlet. While the burden of proof remains with EPA throughout this case, its establishing a prima facie case as to the 35 leases shifts the burden of persuasion and production to respondents Topik Enterprises and LAED. 40 C.F.R. 22.24; *City of Salisbury*, 10 E.A.D. 263, 278-279 (EAB 2002). In other words, respondents must overcome EPA's prima facie showing of a violation or lose on the merits.

In seeking to rebut EPA's case, respondents called several of the lessees to the witness stand to testify that they did, in fact, receive a lead hazard pamphlet. The lessees called to testify were Laura LaCasse, Neil Cote, Joann Duquette, Edgar Bastien, Linda Bouvier, Michelle Cote, Keven Donnell and Jayne Donnell.[15] As explained below, some of the witnesses aided respondents' case, while some did not.

Lessees LaCasse, Cote (both Neil and Michelle), and Duquette testified that they already were living in the target housing at the time that respondents provided them with a lead hazard pamphlet. Tr. 117, 174-176, 185, 188, 227-228 (Vol. 2).[16] The fact that these lessees were living in the target housing when respondents gave them the lead hazard pamphlet required by

---

[14] EPA states that Roy S. Topik had attempted to bribe Jarrod Croteau (after EPA became involved in this case) by offering him a carton of cigarettes in order to "induce him to sign a statement on Topik's behalf." Compl. Br. at 30, citing Tr. 169 (Vol. 1). This assertion by complainant is rejected. In that regard, Croteau's testimony on this point is not clear and, moreover, it is specifically denied by Mr. Topik. *See* Tr. 174 (Vol. 1); *see also*, Resp. R.Br. at 1-2.

[15] Respondents also called Constantino Cecconi as a witness, but concedes that his testimony was "contradictory and unimportant." Resp. Br. at 9.

[16] Even though Duquette answered "yes" to Roy S. Topik's question, "you did receive a lead pamphlet from Eddy when you moved in?", fairly read, her testimony is that she was already living in the target housing when the pamphlet was provided. Tr. 185, 194 (Vol. 2).

40 C.F.R. 745.107(a)(1) is fatal to respondents' defense. This regulation specifically requires that the lead hazard pamphlets be given "*before* the purchaser or lessee is obligated under any contract to purchase or lease target housing that is not otherwise an exempt transaction pursuant to § 745.101." *Id.* (emphasis added). Inasmuch as the subject leases do not involve "exempt transactions," whatever lead hazard pamphlets were provided to the lessees of target housing in this case clearly were untimely and do not constitute compliance with Section 745.107(a)(1).

The testimony of lessees Bastien, Bouvier, and Keven Donnell does, however, rebut EPA's prima facie showing of a violation. These witnesses essentially testified that they had lived in target housing rented by respondents prior to the events giving rise to this case and, as to their prior lease agreement with respondents, the lessees clearly testified that they had been provided with a lead hazard pamphlet. Tr. 200-201, 206, 238-239 (Vol. 2). The testimony of these witnesses is accepted as being truthful. Accordingly, the government has failed to sustain the charges of Section 745.107(a)(1) as it pertains to the Bastien, Bouvier, and Donnell leases.

2. **The "Franklin and Andrade" Lease**[17]

EPA has failed to make a prima facie showing of violation as to the lease of Richard Franklin and Patricia Andrade (Jt. Ex. 58), inasmuch as unlike the leases discussed above, the Franklin/Andrade lease did not have an uninitialed Disclosure form attached. This is a key omission. Complainant's argument that the failure to have such a Disclosure form, specifically a Lead Warning Statement, attached to the lease is actually indicative of the lessor's failure to provide the lead informational pamphlet is unavailing. Compl. Br. at 24-25. It is EPA who bears the burden of proof, not the respondent-lessor. In order to establish a violation of Section 745.107(a)(1), EPA must do more than merely make an accusation of non-compliance and produce a lease that does not have a Disclosure form attached. For example, EPA could have called the lessees to testify that they were not provided with a lead informational pamphlet (like the Barreiro lease discussed below). To allow the government to do less amounts to shifting the burden of proof from the complainant, where it belongs, to the respondent, where it does not.

3. **The "Barreiro" Lease**

There was no written lease for lessee Kerrie Barreiro. At the hearing, Barreiro testified that from October of 1999, through April or May of 2001, she leased 628 East School Street, Unit 2L, from Topik Enterprises. This unit qualifies as target housing. Barreiro further testified that she never received a lead hazard information pamphlet from respondent. Tr. 147-148, 151 (Vol. 1). Barreiro's testimony is sufficient to establish a prima facie case of a Section 745.107(a)(1) violation. Because it stands unrebutted by Topik Enterprises, it is found that respondent violated Section 745.107(a)(1) as alleged in Count 1 of the Amended Complaint.

---

[17] There are two Franklin and Andrade leases. Only the lease identified as Joint Exhibit 58 is being referred to here.

**Count II**

This count charges respondent LAED with two violations of 40 C.F.R. 745.107(a)(2), and TSCA Section 409, 15 U.S.C. § 2689, for failing to make certain disclosures to lessees of target housing concerning "the presence of any known lead-based paint and/or lead-based paint hazards" before the lessee becomes obligated under a lease contract. Section 745.107(a)(2) provides:

> The seller or lessor shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces.

40 C.F.R. 745.107(a)(2).

The property involved in this count is 149 Elm Street, Unit 2L. The leases involved are the January 26, 2001, lease of Richard Franklin and Patricia Andrade (Jt. Ex. 58) and the May 1, 2002, lease of Cathy Krupski and Steven Obert (Jt. Ex. 52). Amend. Compl., ¶36.

With respect to the Section 745.107(a)(2) violations alleged in Count II, Christine Brackett, a Senior Industrial Hygienist with the RIDOH, testified that she conducted an inspection of 149 Elm Street, Unit 2L, on August 5, 1999. She conducted this inspection upon being notified that a lead-poisoned child lived at that address. Tr. 43-45 (Vol. 1). Brackett's inspection report stated that lead paint hazards were found in the front hall of the unit, as well as the bedrooms, windows and mini-blinds, laundry room, kitchen, toilet room, and rear hall. Lead paint hazards also were detected in the exterior of the house. Tr. 49-50 (Vol. 1); Jt. Ex. 17. A copy of Brackett's inspection report was sent to LAED. Tr. 52 (Vol. 1).

RIDOH subsequently followed-up this report by issuing a Notice of Violation ("NOV"), dated September 2, 1999, to LAED for violations at 149 Elm Street, Unit 2L. The NOV informed LAED that the lead paint hazards found in the unit had to be corrected within 30 days, unless an extension was granted. Tr. 52-53 (Vol. 1); Jt. Ex. 18. A second NOV was issued on October 14, 1999, and sent to LAED because the respondent had failed to remediate the lead hazards listed in the first NOV. The second NOV gave respondent 10 more days to correct the lead paint violations. Tr. 60-61 (Vol. 1); Jt. Ex. 19. LAED failed to comply with the second NOV as well and RIDOH referred the matter to the Rhode Island Attorney General's Office for prosecution. Tr. 60-62 (Vol. 1).

Thereafter, LAED entered into a lease agreement with lessees Richard Franklin and



EXHIBIT A

Patricia Andrade for the rental of 149 Elm Street, Unit 2L, with the lease period beginning February 1, 2001. Jt. Ex. 58. Significantly, a lead paint disclosure form was not attached to this lease.

Subsequently, on May 1, 2002, LAED entered into a lease agreement with lessees Cathy Krupski and Steven Obert for the rental of 149 Elm Street, Unit 2L, for a lease period beginning on May 1, 2002. Jt. Ex. 52. A Lead Warning Statement was attached to the Krupski/Obert lease and under the section "Lessor's Disclosure," an "X" was marked next to the passage that "Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing." This form was signed by Roy S. Topik, as president of Topik Enterprises. *Id.*

The evidence establishes a violation of Section 745.107(a)(2) as to the Krupski and Obert lease. LAED was twice warned by the Rhode Island Department of Health (through the NOVs) that there were significant lead-based paint hazards at 149 Elm Street, Unit 2L, and that remedial steps had to be taken to abate the lead hazards. Despite this information, Cathy Krupski and Steven Obert were informed by Roy S. Topik, at the time that they entered into their lease with respondent, that LAED had no knowledge as to the existence of any lead paint or lead-based paint hazards in Unit 2L. This communication by Topik to the lessees is established by the Disclosure form attached to the lease and admitted into the record as Joint Exhibit 52. Respondent's written statement to the lessees that it was unaware of any lead paint or lead-based paint hazards in the unit is contrary to the evidence presented in this case.

Moreover, the testimony of Roy S. Topik, that the mark on the Krupski and Obert lease indicating a lack of knowledge of lead-based paint hazards was essentially a clerical error, is rejected in light of Joint Exhibit 52. *See* Tr. 102-105 (Vol. 3). Topik's testimony that, in fact, he did provide the RIDOH Notices of Violation disclosing the lead-based paint hazards to lessees Krupski and Obert is simply not credible in light of the compelling contrary evidence contained in Joint Exhibit 52. It also is inconsistent with respondent's failure to take any remedial action in response to the two Notices of Violation issued by the Rhode Island Department of Health.

While EPA was able to establish a violation of Section 745.107(a)(2) as to the Krupski/Obert lease, it failed to do so with respect to the Franklin/Andrade lease. Regarding the Franklin/Andrade lease, all that complainant was able to prove was that LAED was informed by the RIDOH as to the existence of lead-based paint hazards prior to the lessees entering into their lease agreement with respondent. Unlike the Krupski/Obert lease, there was no Disclosure form attached to this lease (and thus no statement by LAED that it was unaware of lead paint or lead-based paint hazards). Thus, insofar as the Franklin/Andrade lease is concerned, EPA's charge of violation in Count II lacks documentary proof of the respondent's representation as to a lack of knowledge of lead-based paint hazards. In addition, EPA presented no testimony by the lessees that any such misrepresentation was made to them by respondent prior to their entering into a lease agreement. All that EPA could produce here was the lease and an attendant accusation that LAED failed to comply with Section 745.107(a)(2). This is simply not enough to establish a violation.



EXHIBIT A

**Count III**

Count III of the Amended Complaint charges LAED with failing to provide records or reports available to the lessor pertaining to lead-based paint and, or, lead-based paint hazards for the lease of target housing in violation of 40 C.F.R. 745.107(a)(4), and TSCA Section 409, 15 U.S.C. § 2689. Section 745.107(a)(4) provides:

> The seller or lessor shall provide the purchaser or lessee with any records or reports available to the seller or lessor pertaining to lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. This requirement includes records or reports regarding common areas. This requirement also includes records or reports regarding other residential dwellings in multifamily target housing, provided that such information is part of an evaluation or reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole.

40 C.F.R. 745.107(a)(4).

Specifically, EPA has charged LAED with a Section 745.107(a)(4) violation for allegedly failing to provide lessees Richard Franklin and Patricia Andrade (Jt. Ex. 58) and Cathy Krupski and Steven Obert (Jt. Ex. 52) with lead paint and lead-based paint hazard records and reports regarding 149 Elm Street, Unit 2L, the leased property. Amend. Compl., ¶ 41.[18] (This rental unit was the subject of Count II, above, that also involved the same lessees.) As was the case regarding Count II, EPA has established a violation here with respect to the Krupski/Obert lease, but it has failed to do so with respect to the Franklin/Andrade lease.

First, the record evidence shows that there were lead-based paint hazard reports concerning 149 Elm Street, Unit 2L, before Franklin and Andrade, and Krupski and Obert, entered into a lease agreement with respondent. As discussed in Count II, *supra,* on August 5, 1999, Christine Brackett of RIDOH conducted an inspection of Unit 2L. This inspection uncovered extensive lead-based paint hazards throughout the rental unit. Also, the results of the RIDOH inspection were compiled in a report that subsequently was provided to LAED, prior to the respondent's entering into lease agreement with the Franklin and Adrande and with Krupski and Obert. Tr. 43-45, 49-52 (Vol. 1); Jt. Ex. 17.[19] In addition, respondent was served with two Notices of Violation relating to the lead-based paint hazards present in Unit 2L, again prior to

---

[18] Count II involves the alleged failure to inform the lessees as to the presence of lead paint and lead-based paint hazards. Count III involves the alleged failure to provide lessees with existing reports and records relating to any lead paint and lead-based paint hazards.

[19] Roy S. Topik admitted receiving the RIDOH inspection report for 149 Elm Street, Unit 2L. Tr. 99-100 (Vol. 3).



EXHIBIT A

entering into the subject lease agreements. Tr. 60 (Vol. 1). Thus, it is found that there were reports and records concerning lead-based paint hazards at 149 Elm Street, Unit 2L, and that LAED was well-aware of their existence prior to entering into lease agreements with the involved lessees.

The question now becomes whether respondent provided these records and reports to the lessees involved in Count III prior to their entering into lease agreements with respondent. That question is answered in the negative with respect to Krupski and Obert. At the time that LAED entered into a lease agreement with these lessees, as explained in Count II, LAED was aware of the RIDOH inspection report and the subsequent notices of violation (in fact, respondent had them in hand), but yet did not notify Krupski and Obert of their existence. It stands to reason that if LAED did not notify the lessees as to the presence of lead paint hazards, it also did not provide them with related reports and records. Roy S. Topik's claims to the contrary ( *see* Tr. 100-101 (Vol. 3)) are rejected as being totally inconsistent with the documentary evidence produced by EPA. Accordingly, insofar as the Krupski/Obert lease is concerned, LAED is held to have violated Section 745.107(a)(4).

Insofar as the Franklin/Andrade lease is concerned, however, EPA once again has failed to prove its case. All that EPA has done in this regard is to produce a lease between LAED and the lessees and nothing more. This is simply not enough to establish a prima facie violation of Section 745.107(a)(4). EPA would like this tribunal to draw the inference that had LAED provided the RIDOH report and NOVs to the lessees, it would have indicated so in a Disclosure form attached to the lease. Thus, in EPA's view, because there was no Disclosure form attached to the Franklin/Andrade lease, it follows that no lead paint hazard report or records were provided to the lessees by the lessor.

EPA's explanation of events is only one possibility, out of several, to explain what may have taken place prior to LAED entering into a lease agreement with Richard Franklin and Patricia Andrade. Providing such a possible scenario is not, however, the same as carrying one's burden of proof. EPA could have called one of the lessees as a witness to support its accusations, but complainant did not. The burden of proof that complainant must carry is a "preponderance of the evidence" standard. In other words, that it is more likely than not that the violation took place as alleged. Here, EPA has not met that burden.

**Count IV**

In Count IV, EPA charges that LAED violated 40 C.F.R. 745.113(b)(1), and TSCA Section 409, 15 U.S.C. § 2689, for failing to include a Lead Warning Statement within the contract to lease, or as an attachment to the lease, target housing to Richard Franklin and Patricia Andrade. Amend. Compl., ¶¶ 49 & 50. Section 745.113 in part provides:

> (b) *Lessor requirements.* Each contract to lease target housing shall include, as an attachment or within the contract, the following elements, in the language of the contract (e.g., English,

Spanish):

(1) A Lead Warning Statement with the following language:

> Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

40 C.F.R. 745.113(b)(1).

In this case, the evidence establishes that LAED entered into a rental agreement with lessees Franklin and Andrade, without providing the Lead Warning Statement required by Section 745.113(b)(1), either in the body of the lease, or as an attachment to the lease. Jt. Exs. 49 & 58. Accordingly, EPA has proven the violation charged in Count IV.

**Count V**

In Count V, EPA charges that LAED violated Section 745.113(b)(2) by failing to include in the Richard Franklin and Patricia Andrade lease, or as an attachment to the lease, a statement by the lessor disclosing the presence of known lead-based paint or lead-based paint hazards, or the lessor's lack of knowledge of such. Section 745.113(b)(2) requires that each contract to lease target housing "shall include, as an attachment or within the contract," the following:

> A statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in target housing being leased or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces.

40 C.F.R. 745.113(b)(2).

Here, it is found that LAED entered into a lease agreement with Franklin and Andrade

for the rental of 149 Elm Street, Unit 2L, and that the unit qualifies as target housing. It is further found that the lease agreement did not comply with the requirements of Section 745.113(b)(2). In that regard, LAED did not include in the body of the lease agreement, or in any attachment to the lease, a statement disclosing the presence of lead-based paint and, or, lead based paint hazards as required by the cited regulation. Accordingly, EPA has established that LAED violated Section 745.113(b)(2), as charged.

**Count VI**

EPA alleges that LAED violated 40 C.F.R. 745.113(b)(3) with respect to the lease agreements of Richard Franklin and Patricia Andrade, and Cathy Krupski and Steven Obert, involving 149 Elm Street, Unit 2L. Amend. Compl., ¶¶ 55 & 56. Section 745.113(b)(3) requires that the following be included as an attachment to, or within, a lease contract for target housing:

> A list of any records or reports available to the lessor pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the lessee. If no such records or reports are available, the lessor shall so indicate.

40 C.F.R. 745.113(b)(3).

EPA argues that LAED violated Section 745.113(b)(3) because it did not list the RIDOH inspection report (Jt. Ex. 17) in the body of these two lease agreements, or as an attachment to the leases, before the lessees became obligated under the lease contracts for the rental of 149 Elm Street, Unit 2L. Complainant submits that "the lead disclosure form attached to the Krupski/Obert lease, signed by Mr. Topik, has an 'X' marked next to the statement 'Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing,' and there is no list of records or reports within or attached to the lease. Joint Ex. 52." Compl. Br. at 38-39. EPA further submits that the Franklin/Andrade lease has no lead disclosure form attached, nor is there a list of records or reports within, or attached, to the lease. Compl. Br. at 39, citing Jt. Ex. 58.

EPA is correct that LAED violated Section 745.113(b)(3) relative to the lease agreements it entered with Andrade and Franklin, and Krupski and Obert, for the rental of 149 Elm Street, Unit 2L. As set forth by EPA, the evidence is straightforward and it establishes that respondent did not inform the lessees as to the existence of the RIDOH inspection report in the manner required by Section 745.113(b)(3). Accordingly, LAED is in violation of the cited regulation.

**B. Civil Penalty**

Having determined that respondents Topik Enterprises and LAED violated Section 409 of the Toxic Substances Control Act, 15 U.S.C. § 2689, the next step is to determine the civil



EXHIBIT A

penalty to be assessed for the violations.[20] Section 16(a)(2)(B) of TSCA provides statutory guidance on how to evaluate the evidence in this case for penalty purposes. It states:

> In determining the amount of a civil penalty, the Administrator shall take into account the nature, circumstances, extent, and gravity of the violation, or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require.

15 U.S.C. § 2615(a)(2)(B).[21]

In consideration of this statutory penalty criteria, and taking into account the evidence presented, the penalty amounts proposed by EPA are accepted by this tribunal as to each of the TSCA violations proven in this case.

**Nature, Circumstances, and Extent**

It is fairly easy to recognize the nature and circumstances of the regulations violated by respondents. In proposing the regulations contained in 40 C.F.R. Part 745, EPA clearly identified the serious health threat that lead-based paint poses to adults and particularly to children. Thus, it is critical that lessees of target housing be informed as to the potential presence of lead paint hazards prior to entering into a lease agreement.

Indeed, the stated purpose for the proposal of the Part 745 regulations was to ensure family awareness of: (1) the existence of lead-based paint and lead-based paint hazards in target housing; (2) the hazards of exposure to lead-based paint; and (3) ways to avoid such exposure before becoming obligated to lease target housing that may contain lead-based paint. 59 Fed. Reg. 54986.[22] EPA summarizes well the function of these regulations in stating, "Section 1018

---

[20] Pursuant to Section 1018(b)(5) of the RLBPHRA, 42 U.S.C. § 4852d(b)(5), and 40 C.F.R. 745.118(f), the maximum civil penalty that may be assessed for each of the Disclosure Rule violations in this case is $11,000. *See* 40 C.F.R. 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

[21] EPA states that the statutory penalty criteria of TSCA Section 16(a)(2)(B) must be considered in determining the appropriate civil penalty for the violations in this case. Compl. Br. at 40. To calculate the proposed penalty, complainant utilized *Section 1018 - Disclosure Rule Enforcement Response Policy* (the "Enforcement Response Policy"). Compl. Br. at 41. *See* CX 5.

[22] As explained in the Preamble to the Disclosure Rule:

> EPA and HUD expect that this rulemaking will generate benefits



EXHIBIT A

of the [Residential Lead-Based Paint Hazard Reduction] Act and the Disclosure Rule empower families by giving them information that allows them to make informed choices about where they will live and what they can do to protect themselves and their families from the hazards of lead poisoning." Compl. Br. at 4.

In addition, the regulatory framework of 40 C.F.R. 745, subpart F, itself sets forth a clear and unambiguous approach for lessors of target housing to follow in order to address the potential health threats presented by exposure to lead-based paint. For instance, the regulations violated by Topik Enterprises and LAED articulate the fundamental rules of conduct that lessors of target housing must follow in the leasing of target housing. These rules include: providing the lessees with an EPA-approved lead hazard pamphlet (Section 745.107(a)(1)); informing the lessees of the presence of known lead-based paint and lead-based paint hazards (Section 745.107(a)(2)); providing the lessees with records and reports pertaining to lead-based paint and lead-based paint hazards (Section 745.107(a)(4)); including a Lead Warning Statement in any contract to lease (Section 745.113(b)(1)); including in the lease a statement by the lessor disclosing the presence of known lead-based paint and lead-based paint hazards, or the lessor's lack of knowledge of such (Section 745.113(b)(2)); and including as part of the lease a list of any records or reports available to the lessor that pertain to lead-based paint and lead-based paint hazards, or indicate that no such list exists (Section 745.113(b)(3)).

The regulations involved in this case provide a comprehensive set of safeguards for a lessee entering into a lease agreement to rent target housing. To the extent that these regulations were not followed here, the comprehensive safeguards provided by the Disclosure Rule were simply taken away by respondents. As a result, in those instances in which violations were found, the lessees entered into lease agreements with respondents without the benefit of potentially critical information -- *i.e.*, information on lead-based paint and lead-based paint hazards that could adversely impact the health of the lessees and their children.

__Gravity__

For the reasons already set forth above, the violations committed by respondents in this case are of a serious nature. Moreover, the seriousness of the lead-based paint violations at issue

---

> by giving prospective home purchasers and lessees access to information that might otherwise have been unavailable (e.g., information pertaining to abatement activities for a specific residence) or that they might have been able to acquire only through their own effort and at some cost. In addition, EPA believes the information will generate health benefits by leading many purchasers and lessees to modify their behavior in a way that will reduce risks from lead-based paint.

61 Fed. Reg. 9080 (March 6, 1996).

in this case is further established by the Preamble to the Disclosure Rule. The Preamble states:

> Lead affects virtually every system of the body. While it is harmful to individuals of all ages, lead exposure can be especially damaging to children, fetuses, and women of childbearing age.... Lead poisoning has been called "the silent disease" because its effects may occur gradually and imperceptibly, often showing no obvious symptoms. Blood-lead levels as low as 10 mg/dL [micrograms per deciliter] have been associated with learning disabilities, growth impairment, permanent hearing and visual impairment, and other damage to the brain and nervous system. In large doses, lead exposure can cause brain damage, convulsions, and even death. Lead exposure before or during pregnancy can also alter fetal development and cause miscarriages.

61 Fed. Reg. 9064, 9065 (March 6, 1996). *See* 42 U.S.C. § 4851(1) of the RLBPHRA (Congressional finding that "low-level lead poisoning is widespread among American children, afflicting as many as 3,000,000 children under age 6, with minority and low-income communities disproportionately affected") and § 4851(2) (Congressional finding that "at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems").

In fact, with respect to this case, it is quite significant that the Rhode Island Department of Health investigated four instances of lead poisoning in children in target housing being leased by respondents. (Two of the units were leased by LAED and two units were leased by Topik Enterprises.) The rental units were 149 Elm Street, Unit 2L, 149 Elm Street, 3rd Floor, 606 East School Street, and 123 Rathbun Street. The RIDOH inspections confirmed the presence of lead paint hazards Tr. 49-51, 63, 74, 80-81 (Vol. 1); Jt. Exs. 17, 76, 77 & 78.

It also is quite significant that 21 of the leases where respondents did not comply with the Disclosure Rule provisions of 40 C.F.R. 745, subpart F, involved households with a total of 15 children between the ages of 1-6, and 22 children between the ages of 7-17.

**<u>Degree of Culpability</u>**

The negligence of both Topik Enterprises and LAED in committing the Disclosure Rule violations in this case is of a high degree. First, respondents were aware of the regulations contained in 40 C.F.R Part 745 and, despite the clear and unambiguous requirements of these regulations, respondents simply failed to comply.

Second, respondents also were aware of the RIDOH inspection reports detailing the lead poisoning of children in four of respondents' target housing units, as well as the subsequent Notices of Violation issued by RIDOH, but did not inform prospective lessees of the reports and records. Nor did respondents Topik Enterprises and LAED take any remedial action in response



EXHIBIT A

to the NOVs issued by RIDOH.

**Ability to Pay**

A finding was made at hearing that Topik Enterprises and LAED do have the ability to pay the penalty sought by EPA in this case. Tr. 7 (Vol. 1).

**Ability to Continue to do Business**

There was limited evidence regarding respondents' ability to pay a penalty in this case and continue to remain in business. Jeffrey Norcross, a paralegal specialist with EPA Region 1 (Tr. 196 (Vol. 1)); testified:

> ... I searched through Lexus databases for information about the real estate transactions that those companies had been involved in, and I saw that around -- that during the time that we were doing -- performing our investigation, Mr. Topik was in the process of selling a lot of properties, and so there appeared to be a stream of income.

Tr. 29 (Vol 2). In addition, Mr. Topik sought to object to this line of questioning, stating, "We have already established I'm not raising an inability to pay issue." *Id.*

On balance, the limited evidence in this case supports a finding that respondents have the ability to not only pay the penalty assessed, but also to continue to do business.

**History of Violations**

Respondents do not have a history of Disclosure Rule violations. Compl. Br. at 64, citing Tr. 30 (Vol. 2).

**Other Factors As Justice May Require**

There are no findings made under this penalty criterion.

## V. ORDER

It is held that Topik Enterprises, LLC, and Lead and Asbestos Encasement Designs, LLC, violated Section 409 of the Toxic Substances Control Act and 40 C.F.R. 745, subpart F, as described above. 15 U.S.C. § 2689. For these violations, a civil penalty of $79,200 is assessed against Topik Enterprises, and a civil penalty of $143,000 is assessed against LAED. 15 U.S.C. § 2615. Respondents are directed to pay these penalties within 60 days of the date of this

V. **ORDER**

It is held that Topik Enterprises, LLC, and Lead and Asbestos Encasement Designs, LLC, violated Section 409 of the Toxic Substances Control Act and 40 C.F.R. 745, subpart F, as described above. 15 U.S.C. § 2689. For these violations, a civil penalty of $79,200 is assessed against Topik Enterprises, and a civil penalty of $143,000 is assessed against LAED. 15 U.S.C. § 2615. Respondents are directed to pay these penalties within 60 days of the date of this order.[23]

Unless an appeal is taken to the Environmental Appeals Board pursuant to 40 C.F.R. 22.30, this decision shall become a Final Order as provided in 40 C.F.R. 22.27(c).

Carl C. Charneski

Carl C. Charneski
Administrative Law Judge

[23] Payment is to be made by certified check, or cashier's check. This check is to be made payable to "Treasurer of the United States of America," Mellon Bank, EPA Region I (Regional Hearing Clerk), P.O. Box 360197M, Pittsburgh, Pennsylvania, 15251.



EXHIBIT A

In the Matter of *Topik Enterprises, LLC. and Asbestos Encasement Designs, LLC,* Respondents
Docket No. TSCA-01-2004-0009

## CERTIFICATE OF SERVICE

I certify that the foregoing **Initial Decision**, dated April 6, 2006, was sent this day in the following manner to the addressees listed below.

Mary Angeles
Legal Staff Assistant

Original and One Copy by Facsimile and Certified Mail:

Wanda I. Rivera
Acting Regional Hearing Clerk
U.S. EPA
One Congress Street, Suite 1100
Boston, MA 02114-2023
Fx: (617) 918-0113

Copy by Facsimile and Certified Mail:

Peter DeCambre, Esq.
Enforcement Counsel (SES)
U.S. EPA-Region I
One Congress Street, Suite 1100
Boston, MA 02114-2023
Fx: (617) 918-0113

Copy by Facsimile and Certified Mail:

Roy Topik
President
P.O. Box 8249
Fleming Island, FL 32006
Fx: (904) 212-1022

**Dated: April 6, 2006**
**Washington, D.C.**

EXHIBIT A